LAW OFFICES
# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.
WASHINGTON, D. C. 20005-5901
(202) 434-5000
FAX (202) 434-5029

DANIEL F. KATZ
(202) 434-5143
dkatz@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

September 13, 2018

**VIA ELECTRONIC CASE FILING**

The Hon. Michael H. Simon
U.S. District Court for the District of Oregon
Mark O. Hatfield U.S. Courthouse
1000 SW Third Avenue
Portland, Oregon 97204-2944

      Re:    *In re: Intel Corp. CPU Marketing, Sales Practices and Products Liability Litigation*, Case No. 3:18-md-2828-SI
               **This Document Relates to All Actions**

Dear Judge Simon:

      As suggested by the Court during last week's teleconference (9/6/18 Tr. at 31), Intel respectfully submits this supplemental correspondence. We have tried not to repeat points already made (*see* Docket Nos. 119-120) except to frame our position. At bottom, Intel believes that the issues here are discretionary ones, not rules of law, and the authority below confirms as much. That is, the question is not what is mandated, but what makes the most sense under the circumstances. Intel believes that the language it has proposed strikes a fair and reasonable balance between the legitimate needs of both sides in this MDL, and respectfully requests that the Court adopt that language in its tentative orders.

- **Protective Order Paragraph 3 (line-by-line confidentiality designations).**

      The parties disagree on whether confidentiality designations must be made line-by-line and page-by-page (Plaintiffs' view), or may be done at a document level, subject to conferral and de-designation as appropriate (Intel's view). This Court's own model orders reflect that document level designation is customary. *See* District of Oregon model protective orders ¶ 3, *available at* https://ord.uscourts.gov/index.php/164-attorneys.forms. That is because "line-by-line designation involves inordinate time and expense." *Stiles v. Equifax Info. Servs. LLC*, 2017 WL 65884, at *1 (S.D. Fla. Jan. 4, 2017); *see also Procaps S.A. v. Patheon Inc.*, 2013 WL 4773433, at *6-7 (S.D. Fla. Sept. 4, 2013) (declining to order "more onerous, time-consuming, and expensive page-by-page or section-by-section" designations).

WILLIAMS & CONNOLLY LLP

The Hon. Michael H. Simon
September 13, 2018
Page 2

Plaintiffs' authorities, Docket No. 118 at 2, do not support mandating line-by-line, page-by-page designations for entire productions—in fact, they do not involve that issue at all. In altogether different contexts, they merely apply the general rule that a party seeking a protective order has the burden to show a need for such an order. *See Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Lindsey v. Elsevier, Inc.*, 2016 WL 8731471, at *2 (S.D. Cal. Aug. 19, 2016). Here, where the designating party has the burden to substantiate its designations in a dispute, and the duty to confer on any reasonable request for more granular designation of a particular document, the Court should not compel the extraordinarily burdensome and unworkable process of *ex ante*, line-by-line, page-by-page designations in what may be a massive (and asymmetric) production.

- **Protective Order Paragraph 7(a) (outside counsel of record).**

The Court has appointed ten law firms to interim leadership positions. More than 30 other firms on the docket represent individual plaintiffs named in the Consolidated Complaint. This case will involve Intel's most sensitive information, and Intel believes law firms not appointed to leadership positions in this MDL should not have access to that information. Intel is not questioning anyone's integrity, only trying to cabin access to its confidential information.

During the September 6 teleconference, the Court asked about authority on this point, where neither side had identified on-point examples. The answer is that while there is limited precedent on this question, what Intel is proposing is by no means unprecedented in MDLs involving trade secret and other highly confidential information. In *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Products Liability Litigation*, 2013 WL 2091715, at *3 (N.D. Tex. May 15, 2013), for example, the court limited access to certain documents to the Plaintiffs' Executive Committee. *See also In re Rezulin Products Liability Litigation*, 2002 WL 102601, at *2-3 (S.D.N.Y. Jan. 25, 2002) (restricting review of attorneys'-eyes-only information to members of Plaintiffs' Executive Committee). As these courts have recognized, confidential information may be restricted to the counsel and staff actually running a case. Plaintiffs cited only one case to support their contrary position. Docket No. 118 at 3. But that case is not on point. In *Confederated Tribes of Siletz Indians of Oregon v. Weyerhaeuser Co.*, 340 F. Supp. 2d 1118, 1123 n.4 (D. Or. 2003), the Court merely noted in dicta that discovery materials might sometimes be shared with litigants in similar cases. That has nothing to do with the issue here, where one Consolidated Complaint governs this MDL throughout pre-trial proceedings.[1]

---

[1] Intel believes non-leadership firms should not see its confidential information at all. But if the Court is inclined to restrict disclosure only as to the top tier of confidentiality, the Court could accept Plaintiffs' proposed revision to Paragraph 7(a) of the Protective Order, but add a limiting parenthetical to Paragraph 9, which addresses Outside Counsel Restricted information.

WILLIAMS & CONNOLLY LLP

The Hon. Michael H. Simon
September 13, 2018
Page 3

- **Protective Order Paragraphs 7(k), 8-9 (former employee and deposition witnesses).**

Plaintiffs would like to be able to show confidential information at *any* tier (a) to *any* former Intel employee, as long as the document was prepared during that employee's tenure, and (b) to *any* deposition or trial witness during his or her testimony, regardless of whether there is a basis to believe the witness ever previously saw that document or knew that information. Intel strongly opposes this proposal, which would undermine the entire Protective Order.

Plaintiffs' need to develop their case does not require the right to show any document at all to any former Intel employee or testifying witness. After all, in *Hauck v. Advanced Micro Devices, Inc.*, No. 5:18-cv-00447-LHK (N.D. Cal.), Intel's competitor AMD is defending against substantially similar claims as presented here, based on the same security vulnerabilities, yet the *Hauck* protective order (stipulated by lead plaintiffs' counsel in that case, who also serve on the Interim Plaintiffs' Steering Committee in this case) limits access to attorneys'-eyes-only information to outside counsel, experts, and authors/recipients (or other persons who "possessed or knew the information"), plus the court and vendors. *Hauck* Docket No. 62, Stipulated Protective Order ¶ 7.3, attached as Exhibit 1. There is no special provision for former employees to have access to any of AMD's confidential information at all, nor for testifying witnesses to have access to highly confidential information. The Court should follow the same approach here (consistent with this Court's model orders, *see* District of Oregon model protective orders ¶ 7).

Plaintiffs' own authority, *see* Docket No. 118 at 4, does not support their position. In *Obesity Research Institute v. Fiber Research International*, 2015 WL 13711850, at *1 (S.D. Cal. Oct. 15, 2015), the court *rejected* a provision that would have allowed counsel freely to show attorneys'-eyes-only information during depositions. After all, the protective order already allowed disclosure of such information to authors and recipients, or others with knowledge; expanding access to *any* deposition witness "would render other provisions in the proposed protective order a virtual nullity." *Id.* at *2. The same is true here. In *Solar City v. Doria*, 2017 WL 6551239, at *6 (S.D. Cal. Dec. 21, 2017), the court simply concluded that a *pro se* former employee, who was not involved in any competitive decision-making, could not defend himself if he could not see discovery in his own case. *See also Lindsey*, 2016 WL 8731471 at *3-5 (rejecting attorneys'-eyes-only provision in suit between publisher and editor, a retired professor with no intention of competing with publisher). These cases have no bearing on the context here, where Plaintiffs want free access to all tiers of confidential information for countless former Intel employees (and all testifying witnesses), regardless of their past, current or future activity for Intel's competitors, *and regardless of whether such persons ever had access to such compartmentalized information, let alone actually knew it, while at Intel*.

Intel respectfully urges the Court not to adopt Plaintiffs' proposed Paragraph 7(k) to the Protective Order, or their proposed modifications to Paragraphs 8 and 9, and to incorporate Intel's proposed modifications to Paragraphs 8 and 9 (limiting the highly confidential material that may be shown to witnesses during their testimony). *See* Docket No. 116 at 8.

WILLIAMS & CONNOLLY LLP

The Hon. Michael H. Simon
September 13, 2018
Page 4

- **Protective Order Paragraph 11 (experts).**

      In cases involving highly confidential information, a protocol for the disclosure of third party consultants and experts who will access that information is proper, so that competitive concerns can be addressed.  As the Ninth Circuit has observed:

> It is commonplace for experts and consultants on both sides of any ordinary civil action to be vetted so that trade secrets and other sensitive information will not fall into the hands of someone with an adverse position to the owner of the sensitive information (other than, of course, adverse parties to the litigation itself).  The risk is simply too great that someone in such an adverse position will be tempted to misuse sensitive information for a purpose other than the litigation.

*Ibrahim v. Dep't of Homeland Security*, 669 F.3d 983, 999 (9th Cir. 2012) (quoting approvingly from district court's order).[2]  The Ninth Circuit expressly rejected the claim of a right to keep secret the identity of non-testifying experts:  Rule 26(b)(3)(B) "does not prevent disclosure of the identity of a non-testifying expert, but only 'facts known or opinions held' by such an expert." *Ibrahim*, 669 F.3d at 999.   Plaintiffs claim that Intel's "extreme position on this issue can only be explained as an effort to gain tactical advantage."  Docket No. 118 at 5.  That is as unfair as it is inaccurate.  Intel's proposal not only is the *default* in the Northern District of California's model protective order for highly sensitive information, as Intel previously noted, Docket No. 119 at 5, but also features in model orders of many other jurisdictions.  *See* Exhibit 2 (S.D. Cal. Protective Order) ¶ 8; Exhibit 3 (N.D.N.Y. Confidentiality Order) ¶ 4(d); Exhibit 4 (S.D. Tex. Protective Order) ¶ 6(D).

      Plaintiffs observe that *they* are not competitors of Intel.  Docket No. 118 at 5.  Precisely for that reason, Intel has agreed that Plaintiff representatives who review confidential information need not be identified.  *See* Docket No. 116 at 9 ¶ 10.  Plaintiffs' *experts*, though, are far more likely to have worked or consulted for Intel's competitors, may be working or consulting for them now, or may work or consult for them in the future.  Intel should know the identities of such persons who will see its most sensitive documents (and the same is true the other way, where Intel recognizes that it will need to disclose, for example, the experts testing the named plaintiffs' devices if such devices contain highly sensitive information).

---

[2] *See also Wreal, LLC v. Amazon.com, Inc.*, 2014 WL 12160650, at *4 (S.D. Fla. Nov. 14, 2014) (rejecting claim of a "right to keep the identities of . . . consultants secret"; federal rules provide no such right); *Biovail Corp. v. Hoechst Aktiengesellschaft*, 1999 WL 33454801, at *8 (D.N.J. Nov. 12, 1999) (disclosure of identity of experts was "necessary to protect . . . highly confidential" information); *In re Neubauer*, 173 B.R. 505, 508 (D. Md. 1994) (need to "prevent competitors from gaining access to . . . confidential business information" by exchanging identities of experts is "a legitimate concern and one that is recognized under" the rules).

WILLIAMS & CONNOLLY LLP

The Hon. Michael H. Simon
September 13, 2018
Page 5

Plaintiffs claim that "numerous courts have flatly rejected strikingly similar provisions to that proposed by Intel." Docket No. 118 at 6. But they follow that sentence with cases that undermine their argument. In *Corley v. Google, Inc.*, 2016 WL 3421402, at *3-4 (N.D. Cal. June 22, 2016), the court (1) ruled that no former employee of either Google or any Google competitor would be permitted to serve as an expert *at all* for the plaintiffs, and (2) permitted the plaintiffs to withhold the identities only of non-testifying experts *who did not review source code*—i.e., experts who would have no access to the most sensitive information in the case. *Nygren v. Hewlett-Packard Co.*, 2008 WL 2610558, at *1 (N.D. Cal. July 1, 2008), a one-page order with little analysis, pre-dates the current default expectation in the Northern District of California that experts reviewing confidential information be identified, and more importantly, mooted the need for a disclosure provision by flatly *barring* the disclosure of *any* "eyes only" information to any person who had been employed by HP or a competitor, or who had consulted or served as an expert for a competitor, over the prior five years. And in *Liveperson, Inc. v. 24/7 Customer, Inc.*, 2015 WL 4597546, at *2-4 (S.D.N.Y. July 30, 2015), the court expressly acknowledged substantial contrary authority, and declined to order a disclosure provision where the defendant had made no showing of a need for it beyond a "general assertion" of risk, and where the protective order (among other things) barred past employees of any competitor from reviewing highly confidential information in an expert capacity *at all*.

Numerous courts—including in Plaintiffs' own cited authorities—have understood that a request such as Intel's is not "an effort to gain tactical advantage," and have recognized the serious risks posed by the disclosure of highly confidential information to unidentified third parties. *See also, e.g., Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (in dispute over access by in-house counsel to sensitive information, noting that the federal rules expressly protect a producing party from "undue burden," which includes "protection from misuse of trade secrets by competitors"). Intel respectfully requests that the Court adopt Intel's proposed language for Paragraph 11 of the Protective Order, *see* Docket No. 116 at 9-10.

- **ESI Protocol Section II.B (sampling).**

Plaintiffs propose language regarding conferral on "increas[ing] the relative precision or proportion of relevant items within the search results." Docket No. 117 at 2-3. Intel has no objection to conferral, and supports the objective of increasing the precision of its production. Intel's objection is to Plaintiffs' apparent premise, Docket No. 118 at 8, that the Court should *compel* Intel to "provide iterative sampling" *to Plaintiffs* of Intel's *non-responsive* documents. *See id.* ("Intel should be required to provide iterative sampling to validate that its chosen [search] method is reasonably capturing responsive information."). Plaintiffs' authorities do not support the proposition that from the outset of discovery, a producing party should have a standing obligation to afford access to non-responsive documents to opposing counsel. *See, e.g., City of Rockford v. Mallinckrodt ARD Inc.*, 2018 WL 3766673, at *2 (N.D. Ill. Aug. 7, 2018) (requiring only that producing party sample its own non-responsive documents, and produce any additional *responsive* documents identified); *In re Lithium Ion Batteries Antitrust Litigation*, 2015 U.S.

WILLIAMS & CONNOLLY LLP

The Hon. Michael H. Simon
September 13, 2018
Page 6

Dist. LEXIS 22915, at *49, 55-56 (N.D. Cal. Feb. 24, 2015) (ordering defendants to provide sample to opposing party only "if disputed search terms remain after the quantitative evaluation process"; acknowledging that compelled sampling "will result in the production of irrelevant information to which Plaintiffs have no right").  Whether or not the Court adopts Plaintiffs' proposed language, Docket No. 117 at 2-3, the Court should not compel Intel to provide samples of its non-responsive documents to Plaintiffs.

- **ESI Protocol Section IV.A (native format documents).**

The parties have agreed that certain ESI must be produced in native format, such as spreadsheets with hidden formulas, or audio and video files, and have agreed to produce numerous items of searchable metadata accompanying the production of other ESI in TIFF format, "to make these documents reasonably usable." Docket No. 117 at 5, 12.  Plaintiffs wish to further compel the production of PowerPoint and Word files in native format. *Id.*  But the Sedona Principles state outright that "[e]ven with technological advances, in the majority of instances, TIFF+[3] is a 'reasonably usable' form of production for most purposes and types of ESI under Rule 34(b)(2)(E)(ii)."  The Sedona Principles, Third Edition, 19 Sedona Conf. J. 1, 173 (2018), Principle 12, Comment 12.b.[4]  *See also Nat'l Jewish Health v. WebMD Health Servs. Group, Inc.*, 305 F.R.D. 247, 253-54 (D. Colo. 2014) ("[E]ven if native files are requested, it is sufficient to produce memoranda, emails, and electronic records in PDF or TIFF format accompanied by a load file containing searchable text and selected metadata . . . because the production is in usable form, e.g., electronically searchable and paired with essential metadata." (internal quotation marks and citation omitted; alteration in original)).

Plaintiffs' arguments and authority regarding burden, cost, and authentication, Docket No. 118 at 11-12, misapprehend Intel's concerns.  Intel's position is entirely rooted in information security—i.e., the added risks associated with the handling of native format documents that necessarily lack confidentiality branding or Bates numbers.  "[I]n the digital age, the ease with which ESI can be copied and moved has raised concerns about the security of productions of large volumes of native format files in litigation."  The Sedona Principles, Third Edition, 19 Sedona Conf. J. 1, 178-79 (2018), Principle 12, Comment 12.b.ii.

Plaintiffs' string-cite of cases, Docket No. 118 at 10-11, does not justify compelling production of Word and PowerPoint documents in native format.  For example:  In *Saliga v. Chemtura Corp.*, 2013 WL 6182227, at *1-2 (D. Conn. Nov. 25, 2013), the court compelled production of emails in .msg format out of apparent concern that metadata otherwise would not

---

[3] "TIFF+" means TIFFs, OCR text (to ensure searchability), and load files.  *Id.* at 172.  The parties have stipulated to providing all three features.  Docket No. 117 at 4-7.

[4] *See also id.* at 174, Comment 12.b.i ("To be 'reasonably usable,' the form of ESI need not necessarily be its native format[.]").

WILLIAMS & CONNOLLY LLP

The Hon. Michael H. Simon
September 13, 2018
Page 7

be available, where the principal argument presented in opposition was that TIFFs are "standard practice." Here, though, Intel has agreed to produce every metadata field Plaintiffs requested, and the draft ESI Protocol already provides that tracked changes and comments must be visible on any TIFF. See Docket No. 117 at 5, 12-13. The same was true in *Chevron Corp. v. Stratus Consulting, Inc.*, 2010 WL 3489922, at *4 (D. Colo. Aug. 31, 2010), a Section 1782 subpoena matter, where the court observed that the third party subpoena recipient's "production of documents without metadata intact [would] make it more difficult for [Chevron] to use the information efficiently," particularly where Chevron was claiming fraudulent activity between the subpoena respondent and a court-appointed expert in Ecuador. And in *Dahl v. Bain Capital Partners, LLC*, 655 F. Supp. 2d 146, 149-150 & n.1 (D. Mass. 2009), the court expressly distinguished spreadsheets that contain "formulae," and that therefore needed to be produced in native format, from other types of documents. None of Plaintiffs' cases establishes that native production is mandatory for Word and PowerPoint documents, particularly where all requested metadata will be supplied and where the parties have agreed that tracked changes and comments must be visible. Intel respectfully submits that the production of such documents in TIFF format (with accompanying metadata, and with all tracked changes and comments visible on the TIFF) strikes the appropriate balance for this case, and respectfully requests that the Court adopt its language for Section IV.A of the ESI Protocol, *see* Docket No. 117 at 5.

- **ESI Protocol Section IV.B (email thread suppression).**

Intel has not sought the Court's express *approval* of email thread suppression; Intel requests only that this technology-assisted review tool not be expressly *barred* at this early stage as Plaintiffs propose, where the scope of discovery is unclear. The Sedona Conference expressly identifies this tool as a "means of eliminating cumulative or duplicative documents." The Sedona Conference, *Commentary on Defense of Process: Principles and Guidelines for Developing and Implementing a Sound E-Discovery Process* (Sept. 2016) at 23 (Comment 7.a). *See also* Anne Kershaw & Joe Howie, *Judge's Guide to Cost-Effective E-Discovery* (2010) at 11 ("From a review standpoint, presenting all the e-mails in a thread or group to the same reviewer at the same time has huge advantages in terms of speed of comprehension and review," and "can save 36 percent compared to not using e-mail threading").

As Intel noted in its prior correspondence, email thread suppression may turn out to be an effective tool in this case to limit e-discovery burdens and improve consistency, or it may not, but to rule it out categorically now is premature. If the Court decides not to bar this tool outright, and if Intel determines that email thread suppression would be an appropriate tool under the circumstances of discovery as it unfolds, Intel agrees to confer with Plaintiffs before using it.

Sincerely,

/s/ Daniel F. Katz
Daniel F. Katz